**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **Erica Lynn Smith**<br>**Plaintiff** | §<br>§<br>§ | |
| vs. | § | **Civil Action No. ________________** |
| **Harris County, Texas**<br>**Defendant** | §<br>§<br>§ | |

**PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF THE COURT:**

Into court comes the plaintiff Erica Lynn Smith who files this complaint and in support thereof would respectfully show the court as follows:

**COMPLAINT SUMMARY**

1. The complaint is for violations of the Family and Medical Leave Act (hereinafter "FMLA") and the Americans with Disabilities Act (hereinafter "ADA") as codified in 29 U.S.C. §§ 2601, et seq and 42 U.S.C. §§ 12101, et seq respectively. Specifically, violations are for (i) prohibited interference with, restraint, or denial of the exercise or attempted exercise of an FMLA right; (ii) prohibited discrimination or retaliation for having exercised or attempted to exercise an FMLA right; and (iii) prohibited discrimination in regard to terms, conditions, and/or privileges of employment on the basis of a disability covered by the Americans with Disabilities Act.

**JURISDICTION AND VENUE**

2. The court has jurisdiction in this case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4); 29 U.S.C. § 2617(a)(2); and 42 U.S.C. § 2000e-5(f)(3).

3. The venue of the court is proper in this case pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3).

## PARTY IDENTIFICATION; SUMMONS

4. Erica Lynn Smith (hereinafter "Ms. Smith") is the plaintiff in this case.

(1) The plaintiff is an individual who is and, at the relevant time in this case, was a resident of Harris County, Texas.

(2) The plaintiff, at the relevant time in this case, was an employee as defined by 29 U.S.C. § 2611(2) [FMLA] and 42 U.S.C. § 12111(4) [ADA] having been employed, as required by the FMLA, for at least 12 months with at least 1,250 hours of work service during the applicable 12-month period.

(3) The plaintiff has and, at the relevant time in this case, had a disability as defined by 42 U.S.C. § 12102(1) [ADA] and was a "qualified individual with a disability" as defined by 42 U.S.C. § 12131(2) [ADA].

(4) The last three digits of the plaintiff's driver license number are 481 and the last three digits of the plaintiff's taxpayer identification number are 939.

5. Harris County, Texas (hereinafter "Harris County") is a defendant in this case.

(1) The defendant is and, at the relevant time in this case, was a political subdivision of the State of Texas with the Harris County Toll Road Authority (hereinafter "HCTRA") and the Harris County Department of Economic Equity and Opportunity Department (hereinafter "DEEO") being departments thereof.

(2) The defendant is and, at the relevant time in this case, was an employer as defined by 29 U.S.C. § 2611(4) [FMLA] and 42 U.S.C. § 12111(5) [ADA] having more than 500 employees.

(3) Pursuant to Fed. R. Civ. P. § 4(b), the clerk of the court is requested to sign, seal, and issue a summons for service on said defendant's agents County Judge Lina M. Hidalgo at 1001 Preston Street, Suite 911, Houston, Texas 77002 and Executive Director Roberto Trevino at 7701 Wilshire Place Drive, Houston, Texas 77040 or wherever else said agents may be found.

## PREDICATE SUMMARY

6. On June 23rd, 2026, the plaintiff timely filed a charge of discrimination with the Texas Workforce Commission-Civil Rights Division. This charge was assigned case number 460-

2026-01968. The charge was resolved by the United States Equal Employment Opportunity Commission which granted the plaintiff the right to sue. The deadline to sue was September 22nd, 2026 and the plaintiff timely filed suit.

## SUMMARY OF FACTS

7. Erica Lynn Smith was employed with Harris County, Texas ("Harris County") in various departments during the years 2008 through 2026. At these various county departments, she was entrusted as an executive administrative assistant, agreement coordinator, contract compliance monitor, and a supply chain management compliance analyst. Specifically, Ms. Smith was employed with Harris County in the following departments:

- 2008 – 2010 Community Services Department
- 2013 – 2017 Community Services Department
- 2017 – 2018 Office of Homeland Security and Emergency Management[1]
- 2018 – 2022 Flood Control District
- 2022 – 2025 Department of Economic Equity and Opportunity
- 2025 – 2026 Toll Road Authority

[1] *Special temporary work assignment; Not direct county employment.*

8. As her tenure with Harris County progressed, Ms. Smith was entrusted with more important responsibilities and this entrustment was based on her overall high-level of performance in the areas of job knowledge; job performance; communication skills; general conduct, attitude; reliability, dependability; and attendance.

9. In April 2025, the Harris County Toll Road Authority ("HCTRA") offered Ms. Smith the position of Compliance Analyst with HCTRA. This job offer was based on the recognition of Ms. Smith's knowledge, capabilities, and past job performance, particularly with regards to her preceding position with the Harris County Department of Economic Equity and Opportunity ("DEEO") as a contract compliance monitor. The published Harris County job description for HCTRA Compliance Analyst read in verbatim:

> "Under general supervision, the Compliance Analyst ensures the agency complies with County, Municipal, State, and Federal regulations by coordinating policy adherence and program requirements. This role supports the Administration/Supply Chain Management Division through data analysis, reporting validation, and regulatory oversight. The analyst independently manages sensitive information, prioritizes tasks in a fast-paced environment, and ensures projects are completed accurately and on time."

> "The Compliance Analyst must possess strong analytical, organizational, and communication skills, along with in-depth knowledge of regulatory compliance principals and Harris County policies to support the effective implementation of departmental initiatives."

10. The job description for HCTRA Compliance Analyst reflected a position involving significant responsibility, trust, and authority. This was a job description that Ms. Smith was aptly suited for and HCTRA recognized this.

**Known Covered Disabilities**

11. Prior to Ms. Smith accepting the position with HCTRA, she had known physical and mental impairments that substantially limited one or more of her major life activities; however, she was able to fully perform her job duties at HCTRA with reasonable workplace accommodations that did not cause undue hardship on HCTRA. Her disabilities were well documented by Harris County through its human resources personnel and the disabilities were openly known within the Harris County workplace.

12. Ms. Smith's disabilities began in June 2023 when she suffered from a trimalleolar ankle fracture extending to her tibia and these injuries were followed by further unrelated serious injuries in November 2024 to her neck and lower-back that produced early onset of spondylosis as well as aggravating her preexisting ankle injury. The latter injuries involved multiple spinal disc bulges, spinal facet disease, spinal ligament thickening.

13. The initial injuries caused severe pain, swelling, and bruising with visible deformities and substantially limited the range of motion and ability to bear weight. The latter injuries

caused pain (localized and radiating), stiffness, spasms, numbness, and tingling.

14. Despite surgery and extensive physical rehabilitation, Ms. Smith never fully recovered from her extensive injuries which substantially and persistently limited many of her major life activities to include, but not limited to, sleeping, walking, standing, lifting, bending, concentrating, thinking, communicating, and working. Having to cope with these physical limitations led to Ms. Smith suffering from chronic anxiety and depression. Ms. Smith's non-transitory impairment persisted during her entire employment with HCTRA and the approximate 22 months preceding her HCTRA employment.

**HCTRA Recruitment; Representations**

15. Following Ms. Smith's debilitating injuries in June 2023, she was approved by DEEO to use catastrophic leave after her accrued paid leave was exhausted. Human resources personnel for DEEO engaged in the interactive process with Ms. Smith to address her disability accommodation needs where afterwards she was afforded reasonable workplace accommodations by DEEO which, in part, included home/telework. Disability accommodation was necessary for the remainder of Ms. Smith's DEEO employment.

16. During Ms. Smith's recruitment process with HCTRA she was in regular communication with HCTRA assistant director (of Supply Chain Management) Bernard Willingham. In these communications, Mr. Willingham acknowledged Ms. Smith's history of injuries and her need for reasonable workplace accommodation. Mr. Willingham acknowledged, among other things, that Ms. Smith had difficulty sitting for extended periods of time and that commuting was a hardship for her.

17. Mr. Willingham told Ms. Smith that HCTRA did not afford its employees home/telework; however, he said that after 90 days of employment with HCTRA he did not see why Ms.

Smith could not work from the HCTRA administration offices located at 2600 South Loop West, Houston, Texas 77054 – a short 10-minute commute for Ms. Smith. Reliance on this representation was an important factor in Ms. Smith's decision to accept employment.

18. Upon beginning employment with HCTRA in April 2025, Ms. Smith requested HCTRA to provide her with a desk riser and an anti-fatigue mat as a workplace disability accommodations. These items were provided to her. Ms. Smith purchased her own foot stool and lumbar support. By June 2025, Ms. Smith's neck, back, and ankle symptoms were worsening despite continued physical therapy and rehabilitation.

19. The worsening symptoms prompted Ms. Smith to again ask Mr. Willingham about her being allowed to work at the 2600 South Loop West location to ease her disability hardship. He responded that Ms. Smith must complete her first 90 days of employment before being given this opportunity. A timeline that he gave to Ms. Smith during her recruitment.

**Denial of Reasonable Accommodations**

20. Ms. Smith informed Mr. Willingham that, absent being allowed to work at the closer 2600 South Loop West location, she may be forced to file for leave pursuant to the Family and Medical Leave Act ("FMLA") due to the worsening disability hardship. Mr. Willingham strongly discouraged her from seeking FMLA leave, saying that HCTRA "management frowned on it". Ms. Smith sought FMLA leave despite this discouragement.

21. Ms. Smith was never afforded the opportunity to work at the closer 2600 South Loop West location even after her 90-day employment threshold and she was never afforded the opportunity of home/telework; both asks being reasonable disability workplace accommodations that would not have caused undue hardship on HCTRA. In fact, Ms. Smith then began to experience suspect and adverse employment actions by HCTRA.

**ADA and FMLA Retaliation**

22. On November 10th, 2025, Ms. Smith formally requested the accommodation of being able to temporarily home/telework or, alternatively, a closer work location to ease commute burden. No interactive process by HCTRA (that involved Ms. Smith) occurred regarding this disability accommodation request. Instead, the following events occurred:

*11-10-2025* *Ms. Smith formally requests disability accommodation.*

- 11-25-2025 HCTRA performs an unexpected, premature annual employee performance evaluation on Ms. Smith which notes that the next review would be on April 14th, 2026 – the normal annual evaluation date. The premature evaluation was conducted by Mr. Willingham who now deemed Ms. Smith as a substandard, unsatisfactory employee in contrast to previous good evaluations of Ms. Smith.
- 12-02-2025 HCTRA subjects Ms. Smith to a 90-day disciplinary performance improvement plan which required immediate improvement by Ms. Smith in the areas of Compliance Monitoring and Auditing; Data Analysis and Reporting Accuracy; Timeliness of Deliverables; Stakeholder Communication; and Agreement Monitoring. The plan in essence suggested that Ms. Smith was not satisfactorily performing any aspects of her job. The improvement plan was created by Mr. Willingham and, notably, the plan had a start date one day before the plan was created.
- 12-05-2025 HCTRA documents that it supposedly engaged in the interactive process with Ms. Smith to address her disability accommodation needs. This document was created by Mr. Willingham and it reflected a request denial that read in verbatim: "Unable to accommodate remote work request at this time". The document reflected that human resources personnel denied the accommodation request, but the document provided to Ms. Smith was not acknowledged or executed by human resources personnel.

*01-26-2026* *Ms. Smith begins approved FMLA disability leave.*

- 02-10-2026 HCTRA terminates Ms. Smith from employment 20 days before the end of her disciplinary performance improvement plan and while Ms. Smith was on approved FMLA leave. Ms. Smith did not receive the notice of termination until the second day after she returned from FMLA leave. The termination notice was authored by HCTRA human resources manager Jonathan Burleigh.

23. The extraordinary events leading up to Ms. Smith's employment termination show the willful disregard that HCTRA had for ADA covered disabilities and employer FMLA compliance. Ms. Smith's termination notice, in relevant part, read in verbatim:

> "This is to advise you that your role as Compliance Analyst has been terminated effective immediately. The Toll Road Authority has lost confidence in your ability as an Analyst to fulfill the agency's responsibilities of the department."
>
> * * *
>
> "The following HCTRA policy has been violated: "HCTRA's Progressive Disciplinary Policy; (PL0026): 'Quantity or quality of work below acceptable standards' 'Failure to abide by written procedures, policies, and or requirements' 'Insubordination'" [sic]

24. The termination notice – authored by Mr. Burleigh – did not provide any specifics that legitimately justified Ms. Smith being terminated from employment. And, despite Ms. Smith's good-faith effort to fulfill the patently sham December 2nd, 2025 disciplinary performance improvement plan, she was set up to fail fulfilling the so-called improvement plan. The conduct of HCTRA in the months of November 2025 and December 2025 was simply intended to fabricate justification to wrongly terminate Ms. Smith from employment in retaliation for her disability accommodation requests.

**Pre-Termination Workplace Harassment**

25. During the few weeks leading up to Ms. Smith's employment termination, Mr. Willingham attempted to alter material aspects of Ms. Smith's employment. On one occasion he sought to realign Ms. Smith to clerical duties unrelated to her compliance job duties, clerical duties that were within a different HCTRA work section. During this realignment attempt, Ms. Smith was treated with hostility and disrespect that she had never experienced before as a Harris County employee.

26. Mr. Willingham also began to unjustly challenge Ms. Smith's timesheets and without just cause he threatened to disapprove them. He also attempted on many occasions to coerce Ms. Smith into preparing reports that were not supported by truthful facts. Ms. Smith repeatedly resisted this coercion. The sudden, quickly worsening hostile workplace environment that Ms. Smith was experiencing exacerbated her chronic anxiety and depression as she was becoming unable to cope with the mental distress that Mr. Willingham and his cohorts were subjecting her to.

**Post-Termination Employment Search**

27. Ms. Smith was qualified and suited for her Compliance Analyst job with HCTRA. These apt traits were recognized during her initial recruitment by HCTRA as well as during her employment, up until she insisted on reasonable workplace disability accommodations. The requested accommodations would not have caused undue hardship on HCTRA and, in fact, affording the accommodations may have eliminated the need for Ms. Smith to use FMLA disability leave.

28. After Ms. Smith was terminated from HCTRA employment, she immediately began applying for new employment and has unsuccessfully continued to do so through the date of her original complaint in this case. She has applied with other Harris County departments to include Housing Authority, Flood Control, and Office of County Administration. She had also applied with the City of Houston, Texas. Although she has participated in various new employment interviews, Ms. Smith has not been able to overcome the fabricated negative characterization of her employment termination with HCTRA.

29. Notably, Ms. Smith did apply for and receive state unemployment benefits despite HCTRA reporting that her employment was terminated for cause. The state unemployment com-

mission did not find misconduct on the part of Ms. Smith nor any other basis that would have disqualified her from benefits.

30. Shortly after Ms. Smith's discharge from HCTRA, a former colleague contacted her with a warning. The colleague had worked closely with Mr. Willingham and he said that he had personally witnessed Mr. Willingham commit wrongful acts against Ms. Smith as it relates to the instant complaint. He characterized Mr. Willingham as being "vicious". The colleague warned that Ms. Smith would never be reemployed by Harris County in any department should she file a lawsuit. This warning greatly offended Ms. Smith as she considered it intimidation intended to discourage her from protecting her legal interests.

31. The colleague warning was seemingly validated by a later conversation that Ms. Smith had in June 2026 with disability claims analyst Marjorie Zimmerman. During this later conversation, Ms. Smith was told that she did not qualify for long-term disability benefits because subjectively she appeared to be capable of working and that this subjective appearance was, in part, based on information given by Harris County human resources personnel. Ms. Zimmerman refused to identify the Harris County personnel.

**Aggravation of Disabilities**

32. During a 12+ year period, Ms. Smith had gainfully worked for five different Harris County departments with progressive advancement until she insisted on reasonable workplace disability accommodations during her HCTRA employment. Ms. Smith has now suffered blacklisting from new gainful employment due to the fabricated negative characterization of her employment termination with HCTRA and defamatory statements about her from HCTRA to new prospective employers. She has also been blacklisted from long-term disability benefits.

33. The adverse effect caused by being wrongly terminated from employment by HCTRA and its subsequent blacklisting efforts aggravated the symptoms of Ms. Smith's disabilities, particularly her chronic anxiety and depression. With the loss of her HCTRA employment, Ms. Smith also lost her healthcare benefits which were critical for her disability needs.

**Sustained Damages**

34. As a direct result of Ms. Smith's termination from HCTRA employment, she has lost wages, healthcare benefits, longevity accrual, retirement, financial savings, and the ability to support herself and her family.

35. In addition to losing the security associated with continued county employment, Ms. Smith's vested retirement benefits were put in jeopardy. As a county employee, her plan had a 225% matching benefit value that is now subject to diminishment due to early tax consequences and penalties should Ms. Smith be forced to prematurely access her retirement for survival. Ms. Smith has diligently made good-faith efforts to mitigate her income losses through new gainful employment; however, to date she has been unsuccessful due to HCTRA misconduct.

## CLAIMS FOR RELIEF

**<u>Claim for Relief No. 1</u>: Engaging in unlawful employment practices by interfering with, restraining, or denying the exercise of or the attempted exercise of a right provided for by the Family and Medical Leave Act. 29 U.S.C. § 2615(a).**

36. At the relevant time in this case, the plaintiff was an employee of the defendant and in the course of said employment the defendant willfully engaged in unlawful employment practices in violation of the Family and Medical Leave Act that included:

(1) subjecting the plaintiff to prohibited interference with, restraint, or denial of the exercise or attempted exercise of a right provided for by the Family and Medical Leave Act; and

(2) subjecting the plaintiff to prohibited discrimination or retaliation for having exercised or attempted to exercise a right provided for by the Family and Medical Leave Act.

37. The plaintiff seeks all relief allowed under the law, to include compensatory and punitive damages; recovery of applicable costs and attorney fees; and pre-judgment and post-judgment interest.

**<u>Claim for Relief No. 2</u>: Engaging in unlawful employment practices by discriminating against a qualified individual, as defined by the Americans with Disabilities Act, on the basis of a covered disability in regard to terms, conditions, and/or privileges of employment. 42 U.S.C. § 12112(a).**

38. At the relevant time in this case, the plaintiff was an employee of the defendant and in the course of said employment the defendant willfully engaged in unlawful employment practices in violation of the Americans with Disabilities Act that included:

(1) subjecting the plaintiff to prohibited discrimination in regard to terms, conditions, and/or privileges of employment on the basis of a disability covered by the Americans with Disabilities Act.

39. The plaintiff seeks all relief allowed under the law, to include compensatory and punitive damages; recovery of applicable costs and attorney fees; and pre-judgment and post-judgment interest.

## REQUEST FOR JURY TRIAL

40. Pursuant to Fed. R. Civ. P. § 38(d) and 42 U.S.C. § 1981a(c)(1), the plaintiff requests that a jury resolve all fact issues in this case. The plaintiff has paid the required jury fee.

## PRAYER FOR RELIEF

41. The plaintiff respectfully prays that the court grant the relief specifically sought under each aforementioned claim for relief, to the extent that said relief is not duplicative, to include relief pursuant to 42 U.S.C. § 1983 as applicable.

42. The plaintiff's recovery of attorney fees in this case is authorized by:

(1) 29 U.S.C. § 2617(a)(3);

(2) 42 U.S.C. § 12205;

(3) 42 U.S.C. § 1988(b); and

(4) 42 U.S.C. § 2000e-5(k).

43. The plaintiff further prays for the court to grant all other relief at law or in equity to which may be just and proper.

Respectfully submitted,

/s/ Philip J. Orth, III

**Philip J. Orth, III**
Attorney-in-Charge

Federal Bar Card No. 14065
Texas Bar Card No. 15323070

16406 Lamplighter Street
Crosby, Texas 77532
(713) 520-8333
(772) 217-8162 Fax
philip.orth@yahoo.com

Attorney for:
**Erica Lynn Smith**

## VERIFICATION

**STATE OF TEXAS** §
§
**COUNTY OF HARRIS** §

Before me, the undersigned authority, on this day personally appeared Erica Lynn Smith, who by me duly sworn, upon oath, deposes and says:

"I am the plaintiff in the cause filed in the United States District Court for the Southern District of Texas-Houston Division against the defendant Harris County, Texas which is pending docket assignment and the facts stated in paragraphs 7 through 35 of my Verified Original Complaint above are within my personal knowledge and are true and correct."

______________________
**Erica Lynn Smith**
Affiant

Subscribed and sworn to before me on the 15th day of September, 2026.

MARIA D. MACHADO
My Notary ID # 5042438
Expires March 13, 2029

______________________
Notary Public, State of Texas